**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

GWENDOLYN KAY PARRET, )
)
Plaintiff, )
vs. ) NO. CIV-01-1432-HE
)
UNICCO SERVICE COMPANY, et al. )
)
Defendants. )

**ORDER**

Plaintiff Gwendolyn Parret filed this action as the personal representative of the estate of Glenn Parret, her deceased husband. Mr. Parret, an employee of defendant UNICCO Service Company ("UNICCO") at the time of his death, was killed while working at the Oklahoma City Dayton Tire plant owned by codefendant Bridgestone/Firestone, Inc., d/b/a Dayton Tire ("Bridgestone").[1] UNICCO, an independent contractor, had been hired by Bridgestone to provide maintenance services at the plant. The decedent was electrocuted while working on emergency light fixtures in a warehouse and died as a result of his injuries. Plaintiff contends her husband's death resulted from Bridgestone's negligence[2] and UNICCO's willful and intentional act of having the decedent work on the lights despite its knowledge of the substantial dangers associated with the task.

---

[1]*Bridgestone Firestone North American Tire, LLC has been added to the suit as the successor in interest of Bridgestone/Firestone, Inc. The court will refer to the Bridgestone defendants as "Bridgestone" or "defendant."*

[2]*In her complaint plaintiff also generally alleges that her husband's death resulted from Bridgestone's willful and intentional acts.*

Bridgestone has filed a motion for summary judgment contending plaintiff's claim against it is barred because it did not owe a duty to the decedent to instruct him how to replace the lights safely.[3] Whether a duty of care exists is a question of law for the court. Delbrel v. Doenges Bros. Ford, Inc., 913 P.2d 1318, 1320-21 (Okla. 1996). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence and any reasonable inferences that might be drawn from it are viewed in the light most favorable to the nonmoving party. Simms v. Okla. ex rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). Having applied the Rule 56 standard to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," Jeffries v. Kansas, 147 F.3d 1220, 1228 (10th Cir.1998) (internal quotation and citation omitted), the court concludes defendant's motion should be denied.

## Discussion

Under Oklahoma law a property owner who hires an independent contractor to work on his premises owes a duty to the contractor's employees to exercise reasonable care to furnish them with a safe place to work, including protecting them from hidden dangers of which the proprietor is or should be aware. Hatley v. Mobil Pipe Line Co., 512 P.2d 182, 186-87, 189 (Okla. 1973); Young v. Bob Howard Automotive, Inc., 52 P.3d 1045, 1048

[3] *Defendant UNICCO has filed a motion for summary judgment which will be addressed in a separate order.*

(Okla. Civ.App. 2002). That duty is qualified, however, by the rule that "one who engages an independent contractor to do work for him, and who does not himself undertake to interfere with or direct that work, is not obligated to protect the employees of the contractor from hazards which are incidental to or part of the very work which the independent contractor has been hired to perform." Marshall v. Hale-Halsell Co. 932 P.2d 1117, 1119 (Okla. 1997) (quoting Vecchio v. Anheuser-Busch, Inc., 328 F.2d 714, 718 (2nd Cir.1964)).

Bridgestone asserts that the risks involved in working on the high voltage electrical system involved here were open and obvious[4] and that the involved hazards were incidental to the job that UNNICO was hired to do. It further asserts that it did not maintain control over, or otherwise interfere with, the specific task Mr. Parret was carrying out at the time of his death. Bridgestone's brief, p. 15. As a result, it argues it had no duty to Mr. Parret which could be the basis for liability in these circumstances.

The court concurs with Bridgestone's assertion that the risks involved with working with electrical systems, and particularly with working a high voltage system "hot," were open and obvious. Further, the court also concludes, as plaintiff appears to tacitly concede, that the hazards of working on electrical systems were incidental to, or part of, the work that UNNICO had been hired to perform.[5] Although the circumstances involved in this case,

---

[4]*See generally,* Jones v. Chevron U.S.A., Inc., *718 P.2d 890, 897-98, 900-01 (Wyo. 1986) for a discussion of the obvious-danger rule.*

[5]*The contract creating the Bridgestone-UNNICO relationship, dated August 4, 1969, between predecessor entities for both parties, did not specify the particular maintenance services to be undertaken by UNNICO. It contemplated duties assigned from time to time by Bridgestone.*

particularly the risks of working on energized lights, make the question closer than it would otherwise be, the court concludes this case is nonetheless within the rationale of those cases which recognize that a property owner will not ordinarily be liable for injuries suffered due to activities that are incidental to or part of the work contracted for. *See* Hatley, 512 P.2d at 812 (no liability where climbing telephone poles to detach the wires was "the very work" which the contractor undertook to do); Jackson v. Petit Jean Electric Co-op, 606 S.W. 2d 66 (Ark. 1980) (no liability where contract expressly contemplated working around energized lines). The question then becomes whether the proviso referenced in Marshall and other Oklahoma cases — whether the property owner interfered with or controlled the work — applies.

Bridgestone asserts there is no evidence that it controlled, directed, participated in, or was aware of the specific electrical work undertaken the Mr. Parret at the time he was electrocuted. It argues that the only contact between the decedent and a Bridgestone employee consisted of a discussion between Mr. Parret and Mark Latimer the morning of the incident. Latimer's testimony is to the effect that he saw the decedent on the Genie boom and asked him what he was doing. When the decedent stated he was working on the lights, Latimer offered to keep his employees out, so the room could be "powered down." Latimer states that Mr. Parret then told him he'd been shown two different ways to do the job and was

---

*However, the evidence is undisputed that these duties had included servicing the lighting systems, including the emergency lights here involved, for many years.*

going to do it live.[6]

Latimer's testimony is no doubt relevant to the issues of breach of duty and causation. It may ultimately persuade a jury that Bridgestone did not breach any duty owed in this instance or that the injuries sustained by the decedent were not caused by any breach that is established. However, the evidence as to Latimer's conversation with the decedent does not end the issue. There is other evidence offered here by plaintiff from which a jury might conceivably find that Bridgestone controlled or interfered with the efforts of UNICCO and its employees in such a way as to subject it to liability under the Marshall rule.

Taking the evidence in the light most favorable to the plaintiff, there is evidence that Bridgestone, due to production or other concerns, would not allow the power to the entire area to be shut down while emergency lights were installed or serviced. After it shifted to a 24/7 production schedule, there were considerably fewer "blackout" days when such work could be done with the entire area powered down. The evidence is disputed as to whether it was possible for UNICCO employees to identify the particular circuits involved with the emergency lights (as opposed to the area generally), but there is evidence that such circuits and the means for powering them down were not reasonably identifiable. There is evidence that reliable blueprints or wiring diagrams for the emergency lights, as well as lockout/tagout procedures for some of them, had been requested by UNICCO or its employees (including Mr. Parret) on various occasions but were not provided. There is evidence that, due to the

---

[6] *As noted by Bridgestone in its reply brief, plaintiff mischaracterizes the testimony of Mark Latimer. See plaintiff's response, p. 16; plaintiff's exhibit 27.*

difficulties in identifying the particular circuits for the emergency lights, there was a significant risk of shutting down the lights for the entire area with serious consequences for employee safety.[7] There is evidence that the difficulties in identifying the circuits and cutoffs for the emergency lights were well known to Bridgestone and that it was aware that, regardless of the stated policies of UNICCO, UNICCO employees were, on some occasions, working the lights "hot." There is evidence that, notwithstanding the independent contractor relationship with UNICCO, Bridgestone personnel were the final authority on safety procedures and how they were implemented at the plant. Based on this and other evidence proffered by plaintiff, the court concludes there is a material question of fact as to whether Bridgestone interfered with or controlled UNICCO's maintenance of the emergency lights in such a way as to subject it to liability under the applicable standard.

Viewing the evidence before it in the light most favorable to the plaintiff, the court concludes plaintiff has submitted evidence from which a jury might reasonably conclude that Bridgestone breached a duty of care it owed to plaintiff. Accordingly, Bridgestone's motion for summary judgment [Doc. #184] is DENIED.

IT IS SO ORDERED this 21st day of March, 2006.

JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[7] *See Chevron, 718 P.2d at 897 (employer may have breached duty of care owed employee of independent contractor who was injured by energized power line by "adopting de-energization procedures which deterred [employee's] supervisor from requesting that the power be shut off.")*